THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re:

GLOBE IRON CONSTRUCTION CO., INC.,                  Case No. 11-72717-

        Debtor in Possession.                          Chapter 11

## MOTION FOR AUTHORITY TO USE
## USE CASH COLLATERAL

COMES NOW Globe Iron Construction Co., Inc. (the "Debtor" or "Globe Iron"), by counsel, and moves the Court for entry of an order authorizing the Debtor to use cash collateral, upon the terms outlined in this Motion, which cash collateral secures obligations to a secured creditor. In support thereof, the Debtor states as follows:

### Statement of Jurisdiction

1. On June 10, 2011 (the "Petition Date"), Globe Iron filed a Voluntary Petition for relief under Chapter 11 of Title 11 of the United States Code.

2. Globe Iron continues to operate its business as a Debtor in Possession pursuant to 11 U.S.C. §§ 1101(1), 1107 and 1108.

3. As of the date of the filing of the instant Motion, the United States Trustee has not appointed a creditors' committee.

4. Jurisdiction to consider this matter is invested in this Court pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

5. Globe Iron, a structural steel fabricator and warehouser, was founded by licensed civil engineer, Mr. Sol Mednick. It opened for business in 1923. Globe Iron continues to be owned and operated by descendants of its founder.

Karen M. Crowley, Esq., VSB #35881
Crowley, Liberatore & Ryan, P.C.
1435 Crossways Boulevard, Suite 300
Chesapeake, VA 23320
(757) 333-4500
Counsel for the Debtor

6. Globe Iron engages in three primary lines of business: structural steel fabrication, blasteel and steel warehouse sales. It is a Class A contractor certified by the American Institute of Steel Construction for simple and complex Bridges, general fabrication, and sophisticated paint.

7. It operates from a facility in Norfolk, Virginia at 1401 Maltby Avenue. Its physical plant (the "Facility") covers 17 acres located approximately two miles from the region's central financial district. The Facility is comprised of numerous parcels that host a fabrication facility with approximately 300,000 square feet, a blasting and painting facility with approximately 39,000 square feet and an office building with approximately 10,000 square feet. The plant includes four fabrication bays and three warehouse bays and houses the machinery and equipment necessary for fabrication including overhead cranes, jib cranes, blast machines, welding machines, cambering machines, shears, ironworkers, press brakes, drills, torches, and state of the art CNC equipment.

8. Globe Iron, for many years, has utilized SunTrust and predecessors to SunTrust as its source of working capital financing.

9. Due to a general decline in the construction industry and losses on specific jobs, Globe Iron was unable to meet the covenants in its loan documents and SunTrust accelerated all amounts due under its line of credit. SunTrust confessed judgment against it and desires to see the company liquidated to satisfy its debt.

10. Globe Iron believes that, through the Chapter 11 process, it will be able to complete the majority of its fabrication contracts, generate some revenue which will facilitate the preservation of the Debtor's property and ultimately solicit an investor for or sale of the company.

Debt Structure of Globe Iron

11. The books and records of Globe Iron reflect, in approximate amounts, $3.4 million of secured debt to SunTrust Bank, a nominal amount of contingent liability to S.B. Ballard Construction Co ("SBBCC") relating to construction projects, and approximately $2.0 million to insiders of the Debtor (SunTrust, SBBCC and the Insiders shall be the "Secured Creditors"). The obligations owed to the Secured Creditors shall be the "Secured Obligations." In addition to the Secured Obligations, the Debtor owes approximately $1.2 million in trade and other unsecured debt.

12. Globe Iron is indebted to SunTrust for a Revolving Master Borrowing Loan (the "Loan") made to Globe by SunTrust. The Loan is evidenced by a Commercial Note and Agreement to Commercial Note, both dated June 9, 2009 (collectively the "Note"), and as previously consolidated and/or renewed by Globe Iron in the original principal amount of $3.5 million.

13. The Note is secured by, among other things, a Security Agreement for all business assets (the "Personal Property Collateral") and UCC-1 filings of various dates by Globe Iron in favor of SunTrust as further amended, supplemented or otherwise modified from time to time (collectively the "Security Agreements"). The Note is secured by a Credit Line Deed of Trust dated October 31, 2007 against the Facility (the "Real Property Collateral") in favor of SunTrust. The Note is further supported by a Limited Unconditional Guaranty by Lee S. Peregoff (the "Guaranty") dated November 27, 2006 in the maximum amount of $500,000 plus interest and all charges and expenses as further defined in the Guaranty. The Note, Security Agreements and Deed of Trust shall be the "Loan Documents." The obligations owed by Globe Iron under the Loan Documents shall be the "SunTrust Obligations."

14. The maturity date of the Note was extended to December 31, 2010 and later to January 31, 2011. As of the Filing Date, Globe Iron's records reflect that there was due under the Note principal of $3,400,000, plus interest and other fees accrued under the Note.

   a. The Guarantor is in the process of borrowing funds to pay the $500,000 owed under the Guarantor and will be subrogated to the rights of SunTrust under the Loan Documents. Upon payment of $500,000 to SunTrust, the principal owed to SunTrust will be $2,900,000.

15. SunTrust declared Globe Iron in default under the loan documents in the first quarter of 2011. The parties have discussed but have been unable to agree upon a liquidation plan as SunTrust demands that all of its obligations be repaid by the end of the year and the Debtor has sought a one-year period to find an investor, sell its real estate or otherwise convert all or some of its assets to cash. The timing of

3

the Chapter 11 is prompted by the garnishment by SunTrust of the Debtor's bank accounts and by numerous lawsuits which the Debtor must begin to defend.

16. Globe Iron has paid its monthly interest payment on the SunTrust Obligations. The Debtor anticipates that, in the next few days, Lee Peregoff, against whom SunTrust confessed judgment as a limited guarantor of the SunTrust Obligations, will pay $500,000 to SunTrust to eliminate his liability on the guarantee and will become subrogated to the rights of SunTrust.

## Use of Cash Collateral

17. SunTrust has a first priority lien against all of the Personal Property and against the Facility (the "Collateral"). The Collateral is comprised of accounts receivable and inventory, which the Debtor desires to collect and/or sell in order to generate cash to meet its monthly obligations. The proposed use of cash collateral preserves the opportunity to examine the extent, validity and priority of the liens against the Collateral, and to allow the Debtor to complete its remaining fabrication contracts, generate income while the Facility is being marketed and maintain the value of the Facility while a Plan of Reorganization or Liquidation is developed and shepherded through the confirmation process.

    a. As part of its Budget (defined below), the Debtor reflects the collection of accounts receivable arising from its work on and completion of fabrication contracts. Before the filing, the Debtor had already agreed to joint check arrangements whereby the general contractors would issue joint checks, payable to Globe Iron and subcontractors/vendors providing goods or services to the specified job (the "Joint Check Recipient"). The Budget provides for the continuation of joint checks which will result in the payment by Globe, through receipts from general contractors, of some pre-petition debt.

    b. Based upon lien rights of the Joint Check Recipients and the setoff rights of the general contractors, the Debtor believes that it must continue to honor the joint check arrangements. The Debtor believes that it will lose all of its accounts receivable and be unable to complete its fabrication contracts unless the joint check arrangements continue. The Debtor believes that it is prudent on a going forward basis to use joint check arrangements and will implement that process on any new or existing contracts not yet

4

5

using that procedure to the extent that the contractors will cooperate with that system.

5

18. The factual allegations in the Motion are made without prejudice to any right to contest the secured claims or the collateral position of the holder of the SunTrust Obligations; however, the Debtor has reviewed the loan documents and lien positions of the Secured Creditors and believes that SunTrust has valid, first priority liens against substantially all of the assets of Globe Iron.

19. The proceeds, products, rents and profits of the Collateral constitute cash collateral of the Secured Creditors in accordance with 11 U.S.C. § 363(a) (the "Cash Collateral"). In order to remain in possession of its property, determine the extent, validity and priority of any liens, and achieve a successful reorganization, the Debtor must use Cash Collateral to continue operating and preserve and maximize the value of the Facility.

20. In accordance with 11 U.S.C. § 363(c)(2)(B), the Debtor requests that this Court authorize and approve its use of Cash Collateral for the payment of its operating expenses as set forth in the budget attached hereto as Exhibit A (the "Budget"), which reflects projected monthly income and expenses through the end of August 2011. The Budget includes revenue from the following sources: (a) net receipts from fabrication contracts; (b) continuing receipts from warehouse sales; (c) continuing receipts from blasteel work; and (d) receipts from the sale of "drops" inventory or stock. To the extent that the income side of the budget includes revenue from a sale which is outside of the ordinary course of business of the Debtor, the Debtor will seek court approval in advance of such sale.

21. The Debtor anticipates that any proposed order would provide, among other things, for the following adequate protection to its Secured Creditors:

    a. The Debtor will place any and all cash, checks or monies it collects, receives or derives from the operation of its business or the use of the Collateral (whether pre- or post-petition) into the Debtor's Debtor-in-Possession bank account (the "Account"). Without further authorization from this Court, the Debtor will pay from the Account only reasonable and necessary operating expenses incurred in the ordinary course of the Debtor's business, as set forth on the Budget.

    b. The Debtor will provide the holder of the Secured Obligations with replacement liens pursuant to and in accordance with 11 U.S.C. § 361(2), in and to all property of the estate

6

      of the kind presently securing repayment of the Secured Obligations ("Post-Petition Collateral"), such liens to attach to the Post-Petition Collateral to the same extent, validity and priority as such liens exist on the Collateral.

    c.  The Debtor maintains all rights to contest the amount, extent, validity and priority of liens and its secured debts.

22. Without the use of Cash Collateral, the Debtor and the reorganization efforts of the Debtor could be seriously and irreparably harmed, resulting in significant losses to the Debtor's estate and its creditors.

23. The Debtor is without enough unencumbered funds to operate for 15 or more days until a final hearing on this Motion can be held. The Debtor requires the immediate use of Cash Collateral for payment of operating expenses in accordance with the Budget.

24. Included as part of the budget are certain pre-petition obligations owed by the Debtor for wages to its employees and certain employee benefits such as payment of past due medical/dental insurance. The Debtor pays payroll on Friday for the one week period ending the preceding Friday (e.g. the June 10 payroll is for 1 week of services through June 3). The Debtor requests that the Court, as part of the use of Cash Collateral, authorize the payment of these pre-petition amounts due for wages and other employee benefits. The Debtor believes that it will be irreparably harmed if these pre-petition wages and employee benefits are not paid in the ordinary course of business.

    WHEREFORE, Globe Iron Construction Co., Inc. respectfully requests an interim hearing on the relief sought herein, interim approval of the use of cash collateral, establishment of a final hearing authorizing the Debtor to use the Cash Collateral to pay expenses of operating the business as detailed on Exhibit A, as supplemented at the time of the final hearing, and granting the Debtor such other and further relief as may be proper and just.

                                                Globe Iron Construction Co., Inc.

                                                By: /s/ Karen M. Crowley
                                                   Counsel for the Debtor

Karen M. Crowley, Esq., VSB #35881
Crowley, Liberatore & Ryan, P.C.
1435 Crossways Boulevard, Suite 300
Chesapeake, VA 23320
(757) 333-4500
Counsel for the Debtor

CERTIFICATE OF SERVICE

      I certify that on the 13th day of June, 2011, a true copy of the foregoing Motion was sent by first class, postage paid mail to the parties on the attached service list.

                                                     /s/ Karen M. Crowley